**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JEROLEANER STEPHENS,

                        **Plaintiff,**

v.                                                     **17-CV-911**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 13. Jeroleaner Stephens ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 10, 15.

## BACKGROUND

Plaintiff applied for DIB on August 17, 2012, alleging disability due to herniated cervical spine discs, pinched nerves, low back pain, and right shoulder pain from a March 15, 2010 car accident. Tr. at 21, 277-81, 308.[1] Plaintiff's application was

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 7.

denied at the initial level and a hearing was held on January 27, 2014, after which the Administrative Law Judge ("ALJ") found Plaintiff not disabled though September 30, 2012, the date last insured. Tr. at 117, 127-37. Plaintiff requested review, and the Appeals Council remanded her case on March 13, 2015. Tr. at 142-46. On December 1, 2015, Plaintiff appeared with her attorney and testified at a second hearing, along with a vocational expert. Tr. at 84-116. On January 8, 2016, a second ALJ found Plaintiff not disabled through June 30, 2013, the recalculated date last insured. Tr. at 17- 33. The Appeals Council denied Plaintiff's request for review on July 17, 2017, making the ALJ's determination the final decision of the Commissioner. Tr. at 2-7. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. See Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of

impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin*

*ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

ALJ Robert T. Harvey analyzed Plaintiff's claims using the familiar five-step process described above.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  Preliminarily, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2013.  Tr. at 23.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2010, her alleged onset date, through her date last insured, June 30, 2013.  Tr. at 23.  At step two, he found that Plaintiff had the following severe impairments:  obesity, status-post right shoulder arthroscopic subacromial decompression, rotator cuff tendonitis, degenerative joint disease of the left knee, discogenic cervical spine, lumbar spondylosis, lumbar radiculopathy, hypertension and diabetes mellitus.  Tr. at 23.  At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings.  Tr. at 24-25.

Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. 404.1567(b), except that she cannot work in an area with unprotected heights; cannot work around heavy, moving or dangerous machinery; no climbing ropes, ladders or scaffolds; no exposure to cold; had occasional limitations in bending, climbing, scooping, squatting, kneeling, balancing and crawling; had occasional limitations in the ability to reach in all directions with right upper extremity; had occasional limitations in the ability to handle with right hand and had occasional limitations in pushing and pulling with right upper extremity. Tr. at 25-32. Continuing to the fourth step, the ALJ found that Plaintiff had no past relevant work. Tr. at 32.

At step five, considering Plaintiff's status as a younger person with a limited education and ability to speak English, with no past work experience and the aforementioned RFC, the ALJ relied on the testimony of vocational expert Timothy P. Janokowski, Ph.D. ("VE") in concluding that Plaintiff could perform work that exists in the national economy. Tr. at 32. Specifically, the VE opined that Plaintiff could work as a cashier, cleaner/housekeeper, or a mail clerk. Tr. at 33. Accordingly, the ALJ concluded that Plaintiff was not disabled from March 15, 2010, her alleged onset date, through June 30, 2013, the date last insured. Tr. at 33.

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings. Dkt. Nos. 10, 15. Plaintiff contends that the ALJ committed four errors which require remand as

follows: (1) he failed to explain how Plaintiff could meet the exertional demands of light work given that Dr. Nikita Dave ("Dr. Dave"), the consulting orthopedist, opined that she had moderate limitations in lifting, sitting and standing (Dkt. No. 10-1, pp. 16-19); (2) he did not weigh the opinion of treating physician Dr. Graham Huckell ("Dr. G. Huckell") that Plaintiff was disabled with respect to her right shoulder (Dkt. No. 10-1, pp. 20-23); (3) he failed to provide good reasons for rejecting the Residual Functional Capacity Questionnaire of treating physician Dr. Priyanka Patnam ("Dr. Patnam") (Dkt. No. 10-1, pp. 23-24); and (4) he did not undertake a proper credibility analysis (Dkt. No. 10-1, pp. 24-25).

The Commissioner counters that the ALJ: (1) was not required to explain how moderate limitations were consistent with an RFC for a reduced range of light work (Dkt. No. 15-1, pp. 26-27); (2) acknowledged Dr. Huckell's opinion that Plaintiff had a permanent disability but properly exercised his discretion in rejecting it (Dkt. No. 15-1, pp. 28-29); (3) provided legitimate reasons for assigning limited weight to Dr. Patnam's opinion (Dkt. No. 15-1, pp. 29-30); and (4) properly evaluated Plaintiff's subjective complaints against the record as a whole in weighing her credibility (Dkt. No. 15-1, pp. 21-25). For the reasons that follow, this Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's motion seeking the same.

**Dr. Dave's Assessment of Moderate Limitations**

On October 15, 2012, Dr. Dave, a consulting orthopedist, examined Plaintiff and concluded that she had moderate limitations for the following activities:

7

"repetitive gross motor manipulation through the right shoulder, including lifting, carrying, pushing, pulling and repetitive overhead/outward reaching;" "prolonged sitting, standing, walking, lifting, carrying, pushing and pulling of greater than moderately weighed objects, and repetitive bending/twisting through the lumbar spine;" "repetitive gross motor manipulation through the right lower extremity due to radicular symptoms;" and "for strenuous physical exertion due to near constant headaches at this time." Tr. at 646. In his decision, ALJ Harvey recounted Dr. Dave's opinion in detail but gave it only only "some weight," "based on examination findings and program knowledge." Tr. at 29.

The ALJ ultimately determined that Plaintiff retained the RFC to perform light work (20 C.F.R. § 404.1567(b)) but with numerous restrictions. Tr. at 25. The Code of Federal Regulations defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). As previously noted, the ALJ also found that Plaintiff cannot work in an area with unprotected heights; cannot work around heavy, moving or dangerous machinery; no climbing ropes, ladders or scaffolds; no exposure to cold; had occasional limitations in bending, climbing, scooping, squatting, kneeling, balancing and

8

crawling; had occasional limitations in the ability to reach in all directions with right upper extremity; had occasional limitations in the ability to handle with right hand and had occasional limitations in pushing and pulling with right upper extremity. Tr. at 25-32.

Plaintiff argues that the ALJ failed to "reconcile" Dr. Dave's restrictive assessment with the conclusion that she could perform light work. This Court does not agree. It is well established that an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony." *Cosme v. Colvin*, No. 15-CV-6121P, 2016 WL 4154280, at *11 (W.D.N.Y. Aug. 5, 2016) (internal quotations and citations omitted). Rather, the ALJ has the authority to compare specific medical opinions against the record as a whole, and to reject those opinions that are inconsistent with the evidence. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d Cir. 2017). That is exactly what ALJ Harvey did in Plaintiff's case by assigning only some weight, rather than controlling weight, to Dr. Dave's opinion that she had moderate restrictions.[2]

Moreover, to the extent that the ALJ credited Dr. Dave's opinion that Plaintiff was moderately limited, he built those restrictions into her RFC. For example, he found that rather than being able to perform a full range of light work, Plaintiff was

---

[2] ALJ Harvey exhaustively detailed Plaintiff's medical history and the various opinions from both treating and consulting sources including Dr. Cameron B. Huckell, Dr. Graham R. Huckell, and Dr. Mikhail Strutsovskiy. Tr. at 25-32. He explicitly assigned weight to opinions from Dr. Elliott G. Gross (some weight), Dr. Louis D. Nunez (some weight), Dr. Priyanka Patnaik (little weight), and Dr. Priyanka Patnam (limited weight). Tr. at 29-31.

9

limited to occasional reaching, pushing, pulling, and handling, as well as bending. Tr. at 25, 646. In this regard, the RFC was not fundamentally inconsistent with Dr. Dave's opinions such that the two needed to be reconciled. "Several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing." *Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014). The VE also testified that there were approximately 335,000 light cashier jobs where the employer provides a stool so that the employee may work from a seated or standing position, thereby accommodating a person like Plaintiff who could stand and walk for less than one hour. Tr. at 115. This testimony further undercuts Plaintiff's argument that the RFC and Dr. Dave's opinion were inconsistent and needed to be reconciled.

Based on the foregoing, this Court finds no error in the ALJ's consideration of Dr. Dave's opinion as it relates to the RFC.

**The ALJ's Consideration of Dr. Huckell's Opinion**

Plaintiff's medical history includes various opinions from her treating physicians, Dr. Cameron B. Huckell ("Dr. C. Huckell") and Dr. Graham C. Huckell ("Dr. G. Huckell"), in which they opine that Plaintiff was disabled. Plaintiff contends that the ALJ failed to weigh these opinions and that this failure warrants a remand. This Court disagrees for several reasons. First, it is clear from the decision that the ALJ considered Plaintiff's treatment history with both doctors (including their opinions that Plaintiff was either temporarily or permanently disabled) and implicitly rejected them.

The ALJ's decision contains an exhaustive recitation of Plaintiff's medical history, including Dr. C. Huckell's June 2013 opinion that Plaintiff "is now considered to have effectively reached maximal medical improvement and . . . to have a permanent disability at this time . . ." Tr. at 747; *see also* Tr. at 30.

This and the other opinions cited to by Plaintiff, indicating that she was temporarily disabled, were made in connection with Plaintiff's insurance claims relating to her motor vehicle accident. Tr. at 425, 443, 453, 458, 465, 494, 736. The disability standard for such claims is different than the SSA's, and therefore, a determination that a claimant is "disabled" under her insurer's policy does not bind the Commissioner. *See, e.g., Acevedo v. Colvin*, 20 F. Supp. 3d 377, 388 (W.D.N.Y. 2014) (citing cases for the proposition that "[t]he standard for total or partial disability in a workers' compensation claim differs from the standard of disability set forth by the Social Security Act"); *Lohnas v. Astrue*, 510 F. App'x 13, 14 (2d Cir. 2013) (holding that the Commissioner is not bound by another agency's disability determination). Under the Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The determination of whether a claimant is "disabled" in this particular manner is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e)(1).

In concluding that Plaintiff was able to perform light work with some limitations, the ALJ noted that other than recommending surgery on her right shoulder, Plaintiff's doctors consistently prescribed "conservative care" such as physical therapy, chiropractic treatment or medication (Tr. at 27-28); at various points in her treatment, her symptoms improved or became tolerable, and her pain was otherwise controlled with medication (Tr. at 28-29); and in her activities of daily living, Plaintiff "makes beds, shops, goes to church, and drives" (Tr. at 26). Where, as here, the ALJ sets forth sufficient information for the Court to determine his reasoning in reaching an RFC, there is no need to remand the case for clarification. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010); *Mongeur,* 722 F.2d at 1040 (2d Cir. 1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

**The ALJ's Rejection of Dr. Patnam's RFC Questionnaire**

On February 10, 2014, Dr. Patnam filled out an RFC Questionnaire in which she opined that Plaintiff experiences pain that interferes with attention and concentration to perform simple work tasks frequently and constantly; was capable of low stress jobs; was able to walk 2 blocks without severe pain; could stand 20 minutes at a time, sit 30 minutes at one time, stand/walk less than one hour in an 8-hour work day, and sit less than 2 hours in an 8-hour workday; could occasionally twist, stoop, and crouch, and rarely climb ladders or stairs; would need to take unscheduled breaks

during an 8-hour work day due to pain; did not need a cane or assistive device to occasionally stand/walk; and would not be able to sustain full-time employment at any exertional level. Tr. 755-59. Plaintiff argues that the ALJ did not give good reasons for rejecting the opinion of Dr. Patman, who was a treating source.

The 'treating physician' rule requires ALJ's to give "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Specifically, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). "Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool." *Id.* (quotation marks and brackets omitted).

An ALJ may decline to give "controlling" weight to the opinion of a claimant's treating physician, but must "consider several factors in determining how much weight [the physician's opinion] should receive," *Id.* at 129, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

13

*Ecklund v. Comm'r*, 349 F. Supp. 3d 235, 242 (W.D.N.Y. 2018) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

If an ALJ decides to not give "controlling" weight to a claimant's treating physician, "the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (quotation marks omitted). The ALJ need not "explicitly walk through" the factors identified above, "so long as the Court can conclude that the ALJ applied the substance of the treating physician rule." *Eckland*, 349 F. Supp. at 242 (quotation marks omitted). Nonetheless, "[f]ailure to provide . . . good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted). Because the "'good reasons' rule exists to ensure that each denied claimant receives fair process, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y. 2014) (quotation marks and citations omitted). Of course, the ALJ's reasons for discounting a treating physician's opinion must also be "supported by [specific] evidence in the case record." *Id.* at 323 (quotation marks omitted).

In Plaintiff's case, the ALJ did not reject Dr. Patnam's opinion outright but rather, gave it "limited weight." Tr. at 31. In fact, the ALJ appears to have incorporated many of Dr. Patnam's occasional limitations in Plaintiff's RFC, such as those related to

14

stooping, squatting, and kneeling. Tr. at 25. Contrary to Plaintiff's argument, this Court finds that ALJ Harvey gave sufficiently "good" reasons for rejecting Dr. Patnam's conclusion that Plaintiff was incapable of working. Specifically, he reasoned that Dr. Patnam's opinion was inconsistent with consulting examiner Dr. Dave's assessment. Tr. at 31. This was not erroneous. As a general rule, "a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence." *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (holding that "the opinions of non-examining sources [can] override treating source's opinions provided they are supported by evidence in the record."); *accord Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (holding that it was not erroneous for the ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence).

The ALJ also noted that contrary to Dr. Patnam's RFC, Plaintiff had numerous "examinations that were within normal limits." Tr. at 31. By way of example, the ALJ cited the December 3, 2012 treatment notes from UB Family Medicine that Plaintiff's right shoulder pain was controlled with her pain medications and she did not complain of loss of range of motion (Tr. at 623-26); and Dr. Patniak's medical records stating on January 3, 2013, Plaintiff had "been doing well," had denied "any change in the character or quality of [her] pain" which was "well controlled on medications;" suffered from no fatigue or lethargy, no blurred vision, no chest pain or tightness, no numbness, tingling or pain in feet, no depression or anxiety; upon examination, was in

15

no acute distress, with full range of motion in the neck and appropriate mood and affect (Tr. at 650-53). *See also* Tr. at 657, 661, 667, 677 (Dr. Patniak noting that Plaintiff's pain was well controlled and documenting normal examinations on numerous other occasions); Tr. at 411-12, 415, 419, 422-23, 427-28, 432, 436, 442, 446, 451, 456, 463, 473, 483, 488-89, 493, 497, 506-07, 548, 555, 565, 583, 599, 605, 611, 623, 644-45, 718, 735, 741, 745-46, 779 (various practitioners documenting normal examination findings).

Accordingly, this Court finds that the ALJ articulated sufficiently good reasons for affording Dr. Patnam's opinion less than controlling weight.

**The ALJ's Assessment of Plaintiff's Credibility**

As a general matter, credibility determinations are reserved to the Commissioner, not the reviewing court. *Aponte v. Sec'y of Health & Human Svcs.*, 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses). The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, No. 5:11-CV-0478 (LEK/ATB), 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)).

The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms. "At the first step in the credibility analysis, 'plaintiff's allegations need not be substantiated by medical evidence, but simply consistent with it. The entire purpose of section [ ] 404.1529 . . . is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007) (emphasis in original) (internal citations omitted); *see also* 20 C.F.R. § 404.1529(c) (reasoning that "symptoms, such as pain, are subjective and difficult to quantify," therefore, "any symptom-related functional limitations and restrictions . . . , which can be reasonably accepted as consistent with the objective medical evidence and other evidence, will be taken into account"). "Only allegations beyond what is substantiated by medical evidence are subjected to a credibility analysis. To require plaintiff to fully substantiate [her] symptoms would be both an abrogation of the regulations and against their stated purpose." *Hogan*, 491 F. Supp. 2d at 353 (citing *Castillo v. Apfel*, No. 98 Civ. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)).

If the ALJ determines that the claimant is impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about her symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. *See Genier v. Astrue*, 606 F.3d 46, 49 (E.D.N.Y. 2010); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence).

17

"Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

If a claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors to make a determination regarding the plaintiff's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 16-3p, at *7; *Meadors v. Astrue*, 370 Fed. App'x 179, 184 n.1 (2d Cir. 2010); *see also Murphy v. Barnhart*, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10-11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)). "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)

(quoting *Gallardo v. Apfel*, Civ. No. 96-9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

ALJ Harvey methodically evaluated Plaintiff's credibility, ultimately concluding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms "but not to the extent alleged." Tr. at 27. The ALJ cited to evidence that Plaintiff went to bingo twice per week, drove, rode in a car, dressed and bathed herself, cooked, shopped, went to church, watched television, and managed her finances. Tr. at 24, 64, 99-101, 326-29, 644.[3] These activities are inconsistent with Plaintiff's claims that she is disabled. *See Poupore*, 566 F.3d at 307 (holding that the ALJ properly discounted Plaintiff's claim that he was disabled where he took care of his one-year-old child, changed diapers, and sometimes vacuumed and washed dishes).

The ALJ also noted numerous circumstances where Plaintiff's doctors prescribed conservative treatments, such as physical therapy or medication, for her symptoms, where she showed improvement, and where she had normal exam findings. Tr. at 27-32. These are all permissible factors for the ALJ to consider in determining a plaintiff's credibility pursuant to 20 C.F.R. §§ 404.1529(c)(1) (2011) and 416.929(c)(1). While conservative treatment alone is not grounds for an adverse credibility finding, *Burgess*, 537 F.3d at 129, the ALJ may take it into account along with other factors.

---

[3] Plaintiff testified at her first hearing that after her car accident (her alleged onset of disability) on March 15, 2010, she continued to provide full-time daycare for her two grandchildren. Tr. 50, 66.

*Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (holding that the ALJ was permitted to weigh a claimant's "conservative treatment" regimen in determining that claimant's credibility); *Dixon v. Berryhill*, 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) (stating that "Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record") (citations and quotation marks omitted) (collecting cases).

Based on the foregoing, this Court finds that the ALJ's credibility assessment was free from legal error and that his RFC determination is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is hereby GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
June 11, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**